252 N.J. Super. 142 (1991)
599 A.2d 558
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE RIVERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1991.
Decided November 26, 1991.
*145 Before Judges MICHELS, O'BRIEN and CONLEY.
Penelope M. Taylor argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Eugene M. Haring, and McCarter & English, Designated Counsel; Penelope M. Taylor and Andrew O. Bunn, on the brief).
Dawn J. Gnudi, Assistant Hudson County Prosecutor, argued the cause for respondent (Paul M. DePascale, Hudson County Prosecutor, attorney; Dawn J. Gnudi, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant George Rivers was convicted of (1) aggravated assault by recklessly causing serious bodily injury *146 to George Brown and Darren Burgess in violation of N.J.S.A. 2C:12-1b(1) (Third Count); (2) aggravated assault by purposely or knowingly causing bodily injury to George Brown with a deadly weapon, to wit, a handgun, in violation of N.J.S.A. 2C:12-1b(2) (Fourth Count); (3) aggravated assault by recklessly causing bodily injury to George Brown and Darren Burgess with a deadly weapon, to wit, a handgun, in violation of N.J.S.A. 2C:12-1b(3) (Fifth Count); (4) aggravated assault by knowingly pointing a firearm at or in the direction of George Brown and Darren Burgess in violation of N.J.S.A. 2C:12-1b(4) (Sixth Count); and (5) unlawful possession of a weapon, to wit, a handgun, without first having obtained a permit to carry same as provided in N.J.S.A. 2C:58-4 in violation of N.J.S.A. 2C:39-5b (Twelfth Count).
The trial court denied defendant's motion for a new trial and committed defendant to the custody of the Commissioner of the Department of Corrections (Commissioner) for seven years with a three-year period of parole ineligibility and assessed a $30 Violent Crimes Compensation Board (VCCB) penalty for his conviction for aggravated assault upon George Brown and Darren Burgess under the Third Count and to a concurrent five-year term with a three-year period of parole ineligibility and assessed a $30 VCCB penalty for defendant's conviction for aggravated assault upon George Brown under the Fourth Count. The trial court then merged defendant's conviction for aggravated assault upon George Brown and Darren Burgess under the Fifth Count with his conviction for aggravated assault by pointing a firearm at or in the direction of George Brown and Darren Burgess under the Sixth Count and committed defendant to the custody of the Commissioner for a term of 18 months with an 18-month period of parole ineligibility, which sentence was to run concurrently with the sentences imposed under the Third and Fourth Counts, and assessed a $30 VCCB penalty for both the Fifth Count and Sixth Count. Finally, the trial court committed defendant to a concurrent term of four years with a three-year period of parole ineligibility and assessed *147 a $30 VCCB penalty for unlawful possession of a weapon without first having obtained a permit to carry the same under the Twelfth Count. The aggregate sentence imposed upon defendant, therefore, was seven years with a three-year period of parole ineligibility and a total VCCB penalty of $150.[1]
Thereafter, the trial court, apparently concluding that the sentence was illegal under State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), resentenced defendant separately with respect to each of the persons assaulted under the Third and Fifth Counts. The same terms that had previously been imposed were imposed as to each victim and the aggregate term of the amended sentence was still seven years with a three-year period of parole ineligibility and a total VCCB penalty of $150. Defendant appeals.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds set forth in his brief:
I. THE COURT SHOULD HAVE CHARGED THE JURY ON SELF-DEFENSE AND ITS FAILURE TO DO SO WAS HARMFUL ERROR MANDATING THAT THE CONVICTION BE REVERSED AND THE CASE BE REMANDED.
A. The Court Was Required To Instruct The Jury On Self-Defense Once Testimony Of The State's Witness Indicated That The Defendant May Have Believed He Was In Danger.
B. The Trial Court's Failure To Charge The Jury On Self-Defense Constitutes Harmful Error Requiring That The Convictions Be Reversed And The Case Be Remanded.

*148 II. THE SENTENCE IMPOSED IS EXCESSIVE: THE COURT IMPROPERLY APPLIED THE STATUTORY SENTENCING GUIDELINES.
A. The Court Erred In Its Findings And Application Of The Aggravating Factors.
(i) The Trial Court Misapplied The First Aggravating Factor.
(ii) The Trial Court Erred In Setting Forth No Independent Factual Basis For Its Finding Of The Need For Deterring The Defendant And Others.
(iii) The Trial Court Engaged In Prohibited Double-Counting.
B. The Trial Court Erred In Its Assessment Of Mitigating Factors.
(i) The Court Erred In Not Finding Mitigating Factors Numbers 2, 3, 4 and 5.
(ii) The Court Erred In Not Finding Mitigating Factors Numbers 9 and 10.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). Further comment, however, is appropriate with respect to some of these contentions.

I.
A review of the record convinces us that the trial court properly refused to charge self-defense because the facts do no indicate even the possibility that defendant shot the victims in self-defense. N.J.S.A. 2C:3-4(a) provides:
Use of force justifiable for protection of the person. Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
N.J.S.A. 2C:3-1(a) provides, in pertinent part, that "justification is an affirmative defense." To justify the use of force, the actor must reasonably believe that force is necessary. N.J.S.A. 2C:3-4(a). See State v. Hipplewith, 33 N.J. 300, 316, 164 A.2d 481 (1960). The affirmative defense of self-defense will not lie unless defendant possesses an actual, honest belief in the necessity of using force. State v. Kelly, 97 N.J. 178, 198, 478 A.2d 364 (1984). See State v. Burks, 208 N.J. Super. 595, 604, 506 A.2d 779 (App.Div. 1986).
Honesty alone, however, does not suffice. A defendant claiming the privilege of self-defense must also establish that her belief in the necessity to use force *149 was reasonable. See, e.g., State v. Mellillo, 77 N.J.L. 505 [71 A. 671] (E. & A. 1908); State v. Mark Len, 108 N.J.L. 439, 440 [158 A. 749] (Sup.Ct. 1932). [Kelly, supra, 97 N.J. at 199, 478 A.2d 364].
It is not imperative that actual necessity exist to act in self-defense. But, "the privilege of self-defense does not exist where the defendant's action is not prompted by a belief in its necessity." Kelly, supra, 97 N.J. at 198, 478 A.2d 364. What is reasonable is not measured by what defendant found reasonable, but rather it is measured by an objective standard. State v. Bess, 53 N.J. 10, 16-17, 247 A.2d 669 (1968).
In considering a request to charge a jury on self-defense, the court must examine both the defendant's and the State's case to determine if any evidence supporting a claim of self-defense was provided during the trial. State v. Abbott, 36 N.J. 63, 72, 174 A.2d 881 (1961). As the Supreme Court in Abbott noted:
There has been some uncertainty in the language of our cases upon the burden of proof with respect to self-defense. The decisions are treated in State v. Chiarello, 69 N.J. Super. 479 [174 A.2d 506] (1961), where the Appellate Division correctly said that although the burden is upon a defendant to adduce evidence to support the defense, yet if such evidence appears either in the State's case or upon the defendant's case, the issue must be left to the jury with this instruction: that the burden is upon the State to prove beyond a reasonable doubt that the defense is untrue, and hence there must be an acquittal if there is a reasonable doubt as to whether defendant did act in self-defense within the definition of that defense. [Id.].
It is generally accepted that one who provokes or initiates an assault cannot escape criminal liability by invoking self-defense as a defense to a prosecution arising from the injury done to another. The right to self-defense is only available to one who is without fault. State v. Agnesi, 92 N.J.L. 53, 104 A. 299 (Sup.Ct. 1918), aff'd, 92 N.J.L. 638, 106 A. 893 (E. & A. 1919). N.J.S.A. 2C:3-4b(2)(a) provides:
(2) The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
(a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter. ... [Emphasis added].
*150 But, if after commencing the assault, the aggressor withdraws in good faith from the conflict and announces in some way to his adversary his intention to retire, he is restored to his right of self-defense. Thus, the aggressor must abandon the fight, withdraw and give notice to his adversary. 2 C. Torcia, Wharton's Criminal Law § 193 (14th ed. 1979); 6A C.J.S. Assault & Battery § 91 (1975). As our Supreme Court stated in State v. Bowens, 108 N.J. 622, 628, 532 A.2d 215 (1987):

Generally, "in order for a killer to have a perfect self-defense to homicide, he or she must: (1) be free from fault in bringing on the conflict with his or her adversary; and (2) reasonably, though not necessarily correctly, believe (a) that his adversary will, unless forcibly prevented, immediately inflict upon him or her a fatal or serious bodily injury, and (b) that the deadly force must be used upon the adversary to prevent him or her from inflicting such an injury." [quoting W. LaFave and A. Scott, Jr., Handbook on Criminal Law 583 (1972) (emphasis added)].
Here, the evidence did not warrant a charge of self-defense. First, under defendant's alibi, a self-defense charge is not warranted by the facts. Defendant testified that he did not have a gun the night that Brown, Burgess and Bolden were shot. Furthermore, defendant testified that after his encounter with Peart, he left the area and went to a girlfriend's home. While standing outside of the girlfriend's house, defendant contends that he saw a group of people, none of whom he could identify, and heard a gun shot. Defendant testified that he did not see anyone with a gun and that he did not know he had been shot until he arrived home. Defendant's alibi testimony clearly states that defendant did not use any force that evening. Therefore, the first prong of N.J.S.A. 2C:3-4(a), "the actor reasonably believes that such force is immediately necessary," is not met, and thus, the trial court properly refused to charge self-defense on this ground.
Second, George Brown's testimony indicates that if anything, defendant was the aggressor in this incident. Brown testified that defendant pulled a gun on Peart and "shot it towards the ground.... almost near [Burgess] and [Peart]." Clearly, such force was not immediately necessary to protect defendant from *151 the verbal argument that he and Peart were engaged in. Thus, at this point, self-defense is not a viable defense for defendant. Defendant then left the scene. Brown testified that the group then walked down Bayview Avenue after defendant. Brown did not indicate how they happened upon defendant, Brown testified only that he was shot by defendant. However, Burgess testified that defendant jumped out of an alleyway with the gun drawn demanding to know if they were looking for him. Brown stated that neither he nor Burgess had a gun and that he did not see Bolden with a gun. Thus, at this point, defendant was the aggressor, and there was still no reasonable need for defendant to use force.
Despite defendant's urging that Brown's testimony sets forth a viable claim of self-defense, just the opposite is true. Brown testified that defendant had a gun in his hand pointing down at the ground near Brown. Clearly defendant was the aggressor. Further, Brown testified that at first, when defendant pointed the gun in his direction, he thought defendant was going to kill him. So, Brown put his hand in his jacket to scare defendant, and then, defendant shot him. Brown's testimony demonstrates that defendant was the aggressor in this encounter, thereby negating the defense of self-defense. As our Supreme Court said in State v. Bowens, supra, 108 N.J. at 628, 532 A.2d 215, to have a claim of self-defense, the aggressor must be free from fault. Here, defendant was not free from fault. Defendant precipitated the incident by carrying a gun and pointing it at the victims.
Piecing together all of the evidence in this case, it still depicts defendant as the aggressor. Burgess testified that after the group started to walk down Bayview, defendant jumped out of a dark alleyway pointing a gun at them. It appears that defendant retreated so that he could lie in wait and ambush the victims. Brown never saw any of the victims with a gun. Brown did not testify that he or the other victims tried to strike or injure defendant prior to or during the period that defendant shot the victims. Defendant, not the victims, initiated the *152 conflict. Brown testified that he put his hand in his jacket pocket because at first, he was afraid that defendant would kill him. This testimony indicates that at the time of the shooting, Brown feared for his life and that only in retrospect did he think that defendant did not want to kill him. Furthermore, because the only person with a gun was defendant, any belief that defendant may have had that he was in immediate danger was unreasonable.
Based on the proofs, no reasonable jury could find that defendant was not the aggressor or that defendant reasonably believed that he had to shoot three people to protect himself from unlawful force. As Brown's testimony shows, defendant shot three people so that they would "back off," not because the victims used unlawful force against him. Thus, the claim of self-defense is not available to defendant, and, consequently, the trial court properly refused to charge self-defense.

II.
Defendant also challenges his sentence. He contends that the sentence is manifestly excessive and that the trial court erred in its application and findings with respect to the aggravating factors and its assessment of the mitigating factors. He claims essentially that the trial court should have sentenced him to a term appropriate to a crime one degree lower than that of the crimes for which he was convicted, or alternatively, should have found that a preponderance of the mitigating factors existed and imposed a minimum sentence allowable under the law for a second degree offense. He urges us to modify the sentence downward to a term of between three and five years. We disagree.
Technically, in finding an aggravating factor under N.J.S.A. 2C:44-1a(2), reference to "the serious consequences of the injuries, both serious and permanent, which were inflicted upon the victims here" could be considered double counting of aggravating factors. N.J.S.A. 2C:44-1a(2) deals with the gravity *153 and seriousness of the harm inflicted on the victim. Clearly, the seriousness of bodily injury was an element of the offense of second degree aggravated assault under N.J.S.A. 2C:12-1b(1) and could not properly have been counted as an aggravating factor. Nonetheless, the sentence complied with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's otherwise correct analysis and weighing of the relevant aggravating and mitigating factors. For example, the trial court properly found N.J.S.A. 2C:44-1a(1) as an aggravating factor. This finding is amply supported by the proofs at the trial. According to the proofs defendant pointed the gun at Victor Peart and defendant shot Burgess and Brown. The jury convicted defendant of recklessly shooting one victim and knowingly and purposely shooting the other victim. Defendant must have contemplated that his conduct would cause serious harm to the victims. The evidence indicated that defendant's conduct was intentional in at least one of the shootings. Furthermore, defendant shot and threatened to shoot unarmed individuals. Therefore, there is evidential support for the aggravating factor that the crime "was committed in an especially heinous, cruel or depraved manner."
Similarly, the trial court properly found N.J.S.A. 2C:44-1a(9) as an aggravating factor. The trial court properly determined that "there was a need to deter or discourage the defendant and others from violating the law." There is substantial evidential support for that determination. Defendant, even at sentencing, denied any involvement in the three shootings. However, in his presentence report statement to the case supervisor, defendant stated that "[t]he shooting wasn't what it seemed to be. It wasn't because of a drug deal or anything. As a matter of fact, the guys wanted me to buy drugs from them, but I didn't want [to] so we had an argument. The argument got out of hand and then I got the gun. I realize that having the argument didn't give me the right to shoot anyone." Further, a jury convicted defendant of a number of crimes all involving a gun. Defendant's consistent denial of *154 involvement and his lack of remorse indicate that a prison sentence is necessary to deter defendant from similar conduct in the future, and therefore, the trial court properly found aggravating factor N.J.S.A. 2C:44-1a(9). Finally, of course, the trial court properly found N.J.S.A. 2C:44-1a(3) as an aggravating factor because there is a risk that defendant will commit another offense.
On the other hand, the trial court found only one mitigating factor, N.J.S.A. 2C:44-1b(7), based on defendant's not having a history of prior delinquency or criminal activity. The trial court was not compelled to find other mitigating factors even though it was made aware that defendant "did not contemplate that his conduct would cause serious harm", N.J.S.A. 2C:44-1b(2); that "defendant acted under strong provocation", N.J.S.A. 2C:44-1b(3); that "there were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense", N.J.S.A. 2C:44-1b(4); that the "victim of the defendant's conduct induced or facilitated its commission", N.J.S.A. 2C:44-1b(5); that the "character and attitude of the defendant indicate that he is unlikely to commit another offense", N.J.S.A. 2C:44-1b(9); and that "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents." N.J.S.A. 2C:44-1b(11). The trial court determined that these other mitigating factors did not exist, and we agree.
The trial court's analysis and weighing of the relevant aggravating factors and the one mitigating factor are supported by the record. The aggravating factors substantially outweighed the one mitigating factor and, therefore, the trial court properly imposed the seven-year term with a three-year period of parole ineligibility. Moreover, a parole ineligibility term was mandated by the Graves Act, N.J.S.A. 2C:43-6c. In sum, the sentence imposed upon defendant was neither manifestly excessive nor unduly punitive. It does not represent a miscarriage of justice or shock the judicial conscience. See *155 State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 400-01, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 393-94, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).
Accordingly, the judgment of conviction and order for commitment under review are affirmed.
NOTES
[1] The sentencing transcript reveals that the trial court assessed a $30 Violent Crimes Compensation Board (VCCB) penalty for each of the five counts for which defendant was convicted, for a total VCCB penalty of $150. However, the judgment of conviction and order for commitment sets forth that defendant was assessed a total VCCB penalty of $180. Where there is a discrepancy between the trial court's oral pronouncement of sentence and the sentence described in the judgment of conviction, the transcript of the trial judge's remarks controls. This discrepancy should be corrected by the trial court and an appropriate amendatory judgment entered. State v. Pohlabel, 40 N.J. Super. 416, 423, 123 A.2d 391 (App.Div. 1956).