**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5144-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KERN DANGLADE, a/k/a
RAM, KERN DANGLEDE,
and KERN DANGRADE,

     Defendant-Appellant.

_____

> Argued September 28, 2021 – Decided October 26, 2021
>
> Before Judges Messano and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-08-0635.
>
> Candance Caruthers, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Candace Caruthers, of counsel and on the briefs).
>
> Valeria Dominquez, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Valeria Dominquez, of counsel and on the brief).

PER CURIAM

The Graves Act was enacted in response to the increase of violent crimes committed in the State. State v. Nance, 228 N.J 378, 390 (2017) (quoting State v. Des Marets, 92 N.J. 62, 68 (1983)). Under its terms, a defendant convicted of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), "shall be sentenced to a term of imprisonment by the court[,] . . . [which] shall include . . . a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater . . . during which the defendant shall be ineligible for parole." N.J.S.A. 2C:43-6(c).

"To mitigate the undue severity that might accompany the otherwise automatic application of the mandatory minimum sentence . . . , the Legislature included [N.J.S.A. 2C:43-6.2], a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice." State v. Benjamin, 228 N.J. 358, 368 (2017). In such circumstances, section 6.2 permits the prosecutor to move

before the assignment judge to waive the statutory mandatory prison term and minimum term of parole ineligibility.[1]

If the motion is granted, "the assignment judge shall place the defendant on probation pursuant to [N.J.S.A. 2C:43-2(b)(2)] or reduce to one year the mandatory term of imprisonment during which the defendant will be ineligible for parole." Nance, 228 N.J. at 391–92 (quoting N.J.S.A. 2C:43-6.2). However, "the presumption of incarceration prescribed by N.J.S.A. 2C:44-1(d)" still applies to "the assignment judge's sentencing determination under section 6.2 for a first-degree or second-degree Graves Act offender." Id. at 395.

In this case, a Hudson County grand jury returned an indictment charging defendant Kern Danglade with several crimes, including second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1). The prosecutor moved before the criminal presiding judge (the designated judge) for a waiver. Citing issues with "the strengths of the case" and "the interest of justice[,]" the prosecutor stated the "proper" sentence would be "a [five] with a [one]." The prosecutor asked the judge to "take [the case] out of Graves."

---

[1] In 2008, the Administrative Office of the Courts issued a directive permitting the assignment judge to delegate that authority to the presiding judge of the Criminal Part. Nance, 228 N.J. at 392.

The judge responded by asking, "And the offer is going to be [five] with a [one]?"  The prosecutor responded affirmatively, and, when the judge asked defense counsel if he had anything to add, he responded, "No."  The judge granted the motion.[2]

Later that same day, defendant, his attorney, and the prosecutor appeared before a different judge, who accepted defendant's guilty plea and later sentenced defendant (the sentencing judge).  The prosecutor explained the terms of the plea bargain, specifically, that defendant would plead guilty to the unlawful possession of a handgun, with a sentence recommendation of five-years' imprisonment with a one-year period of parole ineligibility.  Defense counsel stated, "[t]hat's our understanding . . . ."

Defendant told the sentencing judge that he understood the terms of the plea bargain and provided a factual basis for his guilty plea.  The sentencing judge accepted defendant's guilty plea, finding it was entered "freely and voluntarily."

At sentencing, defense counsel told the judge that defendant "certainly st[ood] by his guilty plea."  After referencing defendant's impending incarceration, defense counsel continued:

---

[2]  Defendant's presence was not noted in the transcript.

> [Y]ou know with the gun laws there isn't much discretion from Your Honor. I know five with a one[.] I've gone over that with the family, it's the lowest round it can go. And you know they're just very sad. Like I said, he's a good guy. And you know he just want's [sic] to put this behind him and get his time over as soon as possible.

The sentencing judge then addressed the pertinent aggravating and mitigating factors, finding aggravating factor nine (the need to deter), N.J.S.A. 2C:44-1(a)(9), mitigating factor seven (lack of criminal history), N.J.S.A. 2C:44-1(b)(7), and the non-statutory mitigating factor of "remorse," and the mitigating factors outweighed the aggravating factor. The judge sentenced defendant to a five-year term of imprisonment, subject to a one-year period of parole ineligibility.[3]

---

[3] Despite finding only one aggravating factor, the judgment of conviction (JOC) reflects that the judge also found aggravating factor three (risk of re-offense). The JOC additionally states that "[t]he aggravating factors preponderated over the mitigating factors[,]" contrary to the sentencing transcript. It is well-established that "[i]n the event of a discrepancy between the court's oral pronouncement of sentence and the sentence described in the [JOC], the sentencing transcript controls, and a corrective judgment is to be entered." State v. Abril, 444 N.J. Super. 553, 564 (App. Div. 2016) (citing State v. Rivers, 252 N.J. Super. 142, 147 n.1 (App. Div. 1991)).

Defendant's appeal was initially scheduled to be heard on our Excessive Sentence Oral Argument calendar.[4]  We subsequently granted defendant's motion to have the appeal transferred to a plenary calendar.

Before us, defendant raises the following argument for our consideration:

> A RESENTENCING IS REQUIRED BECAUSE THE ASSIGNMENT JUDGE'S N.J.S.A. 2C:43-6.2 DESIGNEE NEVER MADE THE SUBSTANTIVE PROBATION-OR-PRISON SENTENCING DECISION REQUIRED OF HER BY STATUTE, AND ALSO DID NOT PERMIT ANY OF THE PROCEDURAL PROTECTIONS INTRINSIC TO A SENTENCING DECISION: GRANTING THE DEFENDANT AN AUDIENCE, AFFORDING [DEFENDANT] AN OPPORTUNITY TO ALLOCUTE, CONSIDERING MITIGATING FACTORS, AND REVIEWING A PRESENTENCE REPORT.

In short, defendant contends the assignment judge, or his or her designee, must choose the appropriate sentence — five years' imprisonment with one-year of parole ineligibility or probation — at the time the State's motion is granted. See Nance, 228 N.J. at 394 ("The plain language of section 6.2 reveals a clear

---

[4]  Before the ESOA panel, the parties agreed a remand was needed because, at the time, it did not appear that there was a hearing on the State's application under section 6.2, and to correct the JOC to accurately reflect the sentencing court's findings of aggravating and mitigating factors.  In fact, as already noted, a hearing did occur in open court on the State's motion.  The JOC in the appellate record has not been corrected.

legislative intent that the assignment judge, not the sentencing judge, has the statutory authority to make such a determination." (citing N.J.S.A. 2C:43-6.2)). He argues the sentencing judge only implements the choice already made. See ibid. ("Nor does section 6.2 permit the sentencing court to choose between the statutory alternatives . . . . The sentencing court's task is to devise a sentence that comports with the assignment judge's ruling and the . . . provisions of the Code." (citation omitted)). Further, the prosecutor's sentence recommendation at the time of the motion is merely a recommendation, and not binding on the assignment judge or designated judge. See id. at 397 ("[T]he assignment judge or designee may accept the prosecutor's recommendation as to the appropriate sentence, but is not bound by that recommendation." (citing N.J.S.A. 2C:43-6.2)). We agree with defendant — these principles are clearly what the Nance Court held.

Here, defendant argues that the presiding judge never made the choice between the two sentencing alternatives in section 6.2. The State contends otherwise. A fair reading of the transcript supports defendant's argument. After asking the prosecutor if "five with one" was going to be the State's recommended sentence, the judge only asked if defense counsel had anything to add, to which

7

he replied, "No." The judge announced she was granting the motion, but said nothing else.

However, had the designated judge made a decision in this case, defendant also points to blank spaces left in the Nance Court's procedural paradigm, i.e., the assignment judge or designated judge chooses the appropriate sentence under section 6.2 in granting the prosecutor's motion, and the sentencing judge only "devise[s] a sentence that comports with" that choice and the Code. 228 N.J. at 394. For example, defendant was apparently not present in court when the State's motion was granted, and, therefore, had no opportunity to allocute before the designated judge was to choose the appropriate sentence. See R. 3:21-4(b) (requiring the defendant to be present at sentencing and for the court to "address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment").

Defendant also argues that the designated judge did not have the benefit of a presentence investigation report (PSR) before deciding whether defendant was a candidate for probation under section 6.2, or whether the prosecutor's recommended sentence of imprisonment was appropriate. See R. 3:21-2(a) ("Before the imposition of a sentence or the granting of probation[,] court

8

support staff shall make a presentence investigation in accordance with N.J.S.A. 2C:44-6 and report to the court."). Nor did the designated judge find and weigh the aggravating and mitigating sentencing factors in deciding whether probation was appropriate because a term of imprisonment "would be a serious injustice." N.J.S.A. 2C:44-1(d).

It suffices to say that the Court's opinion in <u>Nance</u> does not address these issues. Moreover, we note that when the State's motion is made in these circumstances, and the assignment or designated judge is required by <u>Nance</u> to decide which of section 6.2's alternative sentences is most appropriate, the defendant has not yet pled guilty. In other words, all the procedures defendant claims were lacking in this case — a PSR, the opportunity for a defendant to allocute, and the finding and weighing of sentencing factors — usually never occur until after a defendant has pled or is found guilty. During oral argument, neither defense counsel nor the prosecutor provided us with a wholly satisfying explanation of how the process envisioned by <u>Nance</u> should be effectuated given the lack of a predicate guilty plea.

While defendant's arguments may demonstrate the need for greater clarity on the subject, none of them were ever raised before the designated judge or the sentencing judge. We refuse to consider them for the first time on appeal. <u>State</u>

v. Witt, 223 N.J. 409, 419 (2015) ("For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" (quoting State v. Robinson, 200 N.J. 1, 20 (2009))).

Furthermore, although the designated judge never truly decided what was the appropriate sentence in this case, defendant never argued that probation was an appropriate sentence, or that he should not be sentenced to a term of imprisonment, notwithstanding the presumption of incarceration prescribed by N.J.S.A. 2C:44-1(d). Indeed, at sentencing — which followed defendant's guilty plea, the preparation of a PSR, and defendant's allocution — defendant never argued that the designated judge left open the possibility that probation was an appropriate sentence under section 6.2. Under this unique statutory scheme, where once the State's motion was granted only two alternative dispositions were possible, and having never done so throughout the proceedings in the Law Division, defendant waived any claim that the process was flawed and probation was appropriate. See State v. Williams, 219 N.J. 89, 101 (2014) (declining to address the merits of the defendant's Confrontation Clause arguments because he failed to raise or preserve the claim at the trial level).

Affirmed.  We remand only for the judge to correct the JOC to comply with his findings and statements at the time he imposed sentence.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5144-18